**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

STANEK HOLDCO, INC., a Colorado corporation

    Plaintiff,

v.

WATER RESOURCES GROUP, a Delaware corporation

## COMPLAINT

Plaintiff Stanek Holdco, Inc. ("Holdco"), by its attorneys Sherman & Howard LLC, for their causes of action against Defendant Water Resources Group ("WRG"), states:

## NATURE OF CLAIM

This is a contract case. Holdco brings this action for damages resulting from Defendant's breaches under the parties' Stock Purchase Agreement. Under the Agreement, Defendant purchased Stanek Constructors in exchange for a lump sum payment as well as subsequent Earnout Payments. To ensure that the Earnout Payments were appropriately and accurately made, the Agreement requires Defendant to maintain operations of Stanek Constructors in the same way it had operated in the past and to provide Holdco with monthly and quarterly financial statements. Defendants failed to comply with these terms, which prevented Holdco from maximizing and receiving the Earnout Payments.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1). The parties are completely diverse in citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

2. Venue is proper in this Court. A substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and a substantial part of the property that is subject to the action is situated in this judicial district. 28 U.S.C. § 1391(b).

## PARTIES

3. Holdco is a Colorado corporation with its principal place of business in Morrison, CO 80465.

4. WRG is a Delaware corporation with a principal street address of 22360 County Road 12, P. O. Box 296, Deerwood, MN 56444.

## GENERAL ALLEGATIONS

5. Plaintiff incorporates all previous paragraphs.

6. Bob Stanek, Diane Stanek, and Jerry Arguello started Stanek Constructors, Inc. ("Stanek Constructors" or the "Company"), as a family-owned company over 20 years ago. The Company has specialized in the construction of water and wastewater treatment facilities of all sizes for municipal, federal, and private sector clients throughout the Western United States, including Colorado.

7. They later established Stanek Holdco, Inc. as a holding company which held Stanek Constructors.

8. In 2017, Holdco put Stanek Constructors up for sale.

9. On March 11, 2018, Plaintiff entered into a Stock Purchase Agreement (the "Agreement") with Defendant for the purchase of Stanek Constructors.

10. Defendant is a holding company and, following the purchase of the Company in 2018, Defendant wholly owns the Company and Rice Lake Construction Group ("Rice Lake").

11. The Agreement provided for two separate forms of payment as consideration for the Company. Under Section 2.1 of the Agreement, Defendant was required to pay Plaintiff the initial purchase price, plus make "Earnout Payments."

12. Under Section 2.3(a), the Earnout Payments were to be paid in two separate installment periods. The first Earnout Payment covers January 1, 2018 through December 31, 2018. The second Earnout Payment covers January 1, 2019 through December 31, 2019.

13. The Earnout Payments were based on the following calculation: "[Plaintiff] will be entitled to an earnout payment in an amount equal to forty percent (40%) of the Excess Net Income Amount." The Excess Net Income Amount is defined as any amount of pre-tax net income that "exceeds $0."

14. The Agreement also requires Defendant to operate Stanek Constructors consistently with its past operational practices. Specifically, Section 2.3(b) provides the following:

> From Closing through December 31, 2019 (the "Earnout Period"), Buyer shall use its reasonable best efforts to **only operate the Business in the usual, regular, and ordinary course substantially consistent with the Company's past practice**, and to the extent consistent with such operation, use commercially reasonable efforts [sic] **preserve its business organization intact**), separately account for the results of operations of the Business so as to allow the Earnout Payments to be calculated following the Earnout Periods in accordance with Section 2.3(c).

15. In addition to information disclosures required under the Earnout Section of the Agreement, Section 8.6 required Defendant to provide Plaintiff additional financial information. Specifically, Section 8.6 requires the following:

> Except as otherwise provided in this Agreement or as [Plaintiff] may otherwise consent in writing during the Earnout Period, **Buyer shall promptly deliver to Seller true and complete copies of monthly and quarterly financial statements of the Company** prepared by or for Buyer **at any time from the Closing Date until the end of the Earnout Period, and any other similar materials that [Plaintiff] reasonably may request**.

16. After the closing of the sale, and in violation of its obligations under the Agreement, Defendant began implementing several significant changes to the operation of the Company, which significantly impacted Holdco's potential Earnout Payments. With these changes, Defendant added significant financial liabilities to the Company, for which the parties had never budgeted.

17. For example, Defendant began assigning Rice Lake employees to various Stanek Constructors projects, charging their costs and expenses to the projects (including their travel costs to and from Minnesota, moving expenses, housing, and subsistence), which had not previously been budgeted, were not necessary, and were not requested by the current management.

18. Without any business purpose, among the various acts of nepotism at the Company's expense, Defendant also forced the Company to hire the son of Rice Lake's President. The Company had no involvement or say in his hiring. Rather, Defendant told Plaintiff that he would be working for the Company, that his role would be Project Manager, and that he would receive $92,000 in annual compensation, plus benefits.

19. Defendant also interfered with daily management and operations of the Company, resulting in project delays and revenue losses. For example, Defendant required all employees of the Company to drop all work and attend the Rice Lake annual meeting in Minnesota, which shut down all job sites for three work days, and incurred significant and unnecessary expenses. Further, Defendant took actions on behalf of the Company without even informing Company management.

20. Defendant removed the Company's bonding capacity, preventing it from bidding on new projects.

21. To improperly minimize the Earnout Payments, Defendant has manipulated the Company financial documents, including manipulating the years in which losses occurred. In that regard, Defendant pulled the audit of the Company's financials after three days due to the discovery of financial manipulations by Defendant.

22. Also, since February 2019, Defendant has failed to provide the monthly and quarterly financial statements of the Company, as required under Section 8.6 of the Agreement.

23. On April 1, 2019 (over a year after the parties executed the Agreement), Stanek Constructors terminated Bob Stanek and Jerry Arguello without cause, and for the purpose of trying to avoid the Earnout Payments due by Defendant.[1] The termination letters were signed by the current Chairman/CEO of the Stanek Constructors, Luke Spalj, who is also Chairman/CEO of the Defendant and Chairman of Rice Lake.

24. On July 2, 2019, Plaintiff notified Defendant by letter of various breaches and requested the following additional information: (1) monthly and quarterly detailed income

---

[1] The claim of breach of the employment agreements of Robert Stanek and Jerry Arguello, against Stanek Constructors, is currently in arbitration.

statements; (2) monthly and quarterly detailed balance sheets; (3) detailed summary of contracts; (4) detailed contract billings; (5) pending change orders; (6) detailed job cost per project; (7) phase job cost report including labor; (9) intercompany billings; (10) company budgets, including any overhead budgets; and (11) profit plans. Defendant failed to cure any of its breaches.

## FIRST CAUSE OF ACTION
**(Breach of Contract)**

25. Plaintiff incorporates here all previous paragraphs.

26. Plaintiff and Defendant entered into an Agreement for the sale of Stanek Constructors.

27. Under the Agreement, Defendant promised to make Earnout Payments to Plaintiff and to "only operate the Business in the usual, regular, and ordinary course substantially consistent with the Company's past practice, and to … preserve its business organization intact …" for purposes of Earnout. In addition, Defendant promised to provide Plaintiff with monthly and quarterly financial statements of the Company from Closing through the end of the second Earnout Period (December 2019).

28. Defendant breached its obligations under the Agreement by, among other things, making operational changes to the Company and interfering with its daily operations. These changes, which directly breach Section 2.3, significantly and negatively impacted any potential Earnout Payments.

29. Defendant also breached the Agreement by failing to provide monthly and quarterly financial statements.

30.     Defendant failed to provide materials requested in Plaintiff's June 2, 2019 letter, including: (1) monthly and quarterly detailed income statements; (2) monthly and quarterly detailed balance sheets; (3) detailed summary of contracts; (4) detailed contract billings; (5) pending change orders; (6) detailed job cost per project; (7) monthly project projections sheets; (8) phase job cost report including labor; (9) intercompany billings; (10) company budgets, including any overhead budgets; and (11) profit plans.

31.     Defendant also violated its duty of good faith and fair dealing.  Defendant had discretion in implementing its obligations.  Defendant's actions, have been done as part of a bad faith attempt to avoid fulfilling its own obligations under the Agreement, specifically including its duty to pay the Earnout Payments.  Defendant violated its obligations of good faith and fair dealing in doing so.  Many of these breaches had and continue to have a direct and measurable impact on the calculation of the Earnout due to Holdco.

32.     Plaintiff has suffered damages as a result of Defendant's breaches in an amount in excess of $75,000.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests this honorable Court enter judgment for it on this Complaint against Defendant, and provide the following relief:

A.     Award Holdco damages against Defendant in an amount proven at trial.

B.     Award Stanek Holdco compensatory and consequential damages against Defendant in an amount to be determined at trial.

C.     Award Stanek Holdco pre- and post-judgment interest and attorneys' fees and costs incurred in bringing this action against Defendant.

D.     Such other and further legal and equitable relief as this Court deems just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a jury trial on all causes of action and claims with respect to which it has a right to jury trial.

Dated this 11th day of November, 2019.

SHERMAN & HOWARD L.L.C.


By: s/ *Tamir I. Goldstein*
       Tamir I. Goldstein
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
(303) 297-2900
(303) 298-0940 (FAX)
tgoldstein@shermanhoward.com
*Attorneys for Plaintiff*

Address of Plaintiff:
P. O. Box 1133
Morrison, CO 80465