**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-3194-WJM-SKC
*Consolidated with Civil Action No. 19-cv-3360-WJM-SKC*

STANEK HOLDCO, INC.,

      Plaintiff,

v.

WATER RESOURCES GROUP, INC.,

      Defendant.

_____

**ORDER GRANTING WATER RESOURCE GROUP'S MOTION TO COMPEL
ARBITRATION AND MOTION FOR SUMMARY JUDGMENT**
_____

Before the Court are the following motions:

1.     Plaintiff Stanek Holdco's Motion to Dismiss Defendant's Counterclaims
(ECF No. 22);

2.     Defendant Water Resources Group's Motion to Compel Arbitration and
Stay Proceedings (ECF No. 24);

3.     Plaintiffs Arguello and Stanek's Motion to Remand for Lack of Subject
Matter Jurisdiction (ECF No. 68);

4.     Plaintiffs Arguello and Stanek's Motion to Dismiss Defendant's
Counterclaim for Failure to State a Claim Pursuant to Fed. R. Civ. P.
12(b)(6) (ECF No. 71);

5.     Plaintiffs Arguello and Stanek's Motion to Dismiss Defendant's Amended
Counterclaims for Failure to State a Claim Pursuant to Fed. R. Civ. P.

12(b)(6) (ECF No. 73); and

6.     Defendant Water Resources Group's Motion for Summary Judgment
       (ECF No. 75).

## I. FACTUAL BACKGROUND[1]

### A.     Sale of Stanek Constructors

In late 2017 and early 2018, Stanek Holdco, Inc. ("Holdco") negotiated the sale
of its construction company, Stanek Constructors, Inc. ("Stanek Constructors"), to
Water Resources Group ("WRG").  (ECF No. 24 at 3; ECF No. 76 at ¶ 4.)  At the time,
Holdco was comprised of four individual shareholders, Robert Stanek ("Stanek"), Diane
Stanek, Jerry Arguello ("Arguello"), and George Foote ("Foote").  (ECF No. 76 at ¶ 1.)
Stanek and Arguello were the Chief Executive Officer and Chief Financial Officer,
respectively, of Stanek Constructors.  (ECF No. 76 at ¶ 3; ECF No. 86 at 5.)

On March 1, 2018, Holdco, WRG, and the four Holdco shareholders executed a
Stock Purchase Agreement ("SPA") that transferred all of the issued and outstanding
capital stock of Stanek Constructors to WRG for $2,222,525.46.  (ECF No. 24 at 1;
ECF No. 46 at 2; ECF No. 76-2 at 2.)  On the same day, Stanek Constructors entered
into separate employment agreements ("Employment Agreements") with three of
Holdco's shareholders—Stanek, Arguello, and Foote—so that they would remain
employed by Stanek Constructors after its sale to WRG.  (ECF No. 76-2 at 27, 41, 55.)

---

[1]  The following factual summary is based on the parties' briefs and documents
submitted in support thereof.  These facts are undisputed unless attributed to a party or source.
Additionally, the facts are common to each of the motions under consideration, unless
otherwise stated.  All citations to docketed materials are to the page number in the CM/ECF
header, which sometimes differs from a document's internal pagination.

The Employment Agreements were attached to the SPA as Exhibit A.  (*See id.* at 26.)

The Employment Agreements contain arbitration provisions that state in relevant part:

> Arbitration.  Any dispute arising out of or relating to this Agreement or the alleged breach of it, or the making of this Agreement, including claims of fraud in the inducement, shall be settled by binding arbitration. . . . Arbitration will be conducted pursuant to the provisions of this Agreement, and the Colorado District Rules of Civil Procedure, except as limited by this paragraph (c), unless such rules are inconsistent with provisions of this Agreement. . . .

(ECF No. 24 at 6; ECF No. 25-2 at § 12(c); ECF No. 76 at ¶ 34.)

## B.    Arguello and Stanek's Termination and Arbitration Proceeding

On April 1, 2019, Stanek Constructors terminated Arguello and Stanek's employment.  (ECF Nos. 86-1, 86-2.)  The termination letters state that

> [p]ursuant to Section 3(c)(2)(i)(e) of the [Employment] Agreement, we hereby notify you that we are terminating your employment and the Employment Period for Misconduct, effective immediately.  Among other reasons, you breached Section 4.9 (Absence of Material Adverse Changes) of that certain Stock Purchase Agreement dated effective as of March 1, 2018 between you, the Company and certain other parties thereto.

(ECF Nos. 86-1, 86-2.)

On September 30, 2019, Stanek and Arguello commenced an arbitration proceeding against Stanek Constructors for allegedly breaching their respective Employment Agreements.  (ECF No. 76 at ¶ 34.)  Thereafter, WRG attempted to assert a counterclaim in that arbitration proceeding, alleging that Stanek and Arguello fraudulently or negligently misrepresented (1) financial information relating to one of Stanek Constructors's key projects; and (2) Stanek Constructors's compliance with its

ERISA obligations.  (*Id.* at ¶ 36.)  WRG further alleges that it was induced into entering into the SPA due to Stanek and Arguello's material misrepresentations.  (*Id.* at ¶ 37.) Stanek and Arguello, however, dispute that they ever agreed to arbitrate with WRG. (*Id.* at ¶ 38.)

**C.     Holdco v. WRG Lawsuit**

On November 11, 2019, Holdco filed a lawsuit against WRG, alleging that WRG failed to maintain the operations of Stanek Constructors as required under the terms of the SPA, which in turn prevented Holdco from earning and maximizing certain earnout payments that it was entitled to receive under the SPA.  (ECF No. 1 at 1.)  Holdco also alleges that Stanek Constructors terminated Stanek and Arguello on April 1, 2019 "without cause, and for the purpose of trying to avoid the Earnout Payments due by [WRG]."  (*Id.* at 5, ¶ 23.)  Holdco brings a single claim against WRG for breach of contract (*see id.* at 6–7, ¶¶ 25–32).

On December 26, 2019, WRG filed its Amended Answer and Counterclaim (ECF No. 23), asserting three counterclaims against Holdco: (1) that Holdco made fraudulent and/or negligent misrepresentations to WRG that induced WRG to enter into the SPA (*see id.* at 17–19, ¶¶ 37–53); (2) a request for a declaration that WRG's claims—that Holdco induced WRG to "enter into the transaction for the [SPA] and the Employment Agreements by fraudulently or negligently making material misrepresentations or omissions when entering into the [SPA], including [the Employment Agreements]"—are subject to arbitration under 9 U.S.C. §§ 3–4 (*see id.* at 19–20, ¶¶ 54–60); and (3) that Holdco breached the SPA (*see id.* at 20–21, ¶¶ 61–64).

On December 26, 2019, WRG filed a Motion to Compel Arbitration and Stay

4

Proceedings.  (ECF No. 24.)  Holdco responded on January 28, 2020 (ECF No. 46) and WRG replied on February 14, 2020 (ECF No. 55).

Holdco moved to dismiss WRG's amended counterclaims on January 8, 2020. (ECF No. 28.)  WRG responded on January 31, 2020 (ECF No. 50), and Holdco replied on February 14, 2020 (ECF No. 54).

## D.    Arguello et al v. WRG Lawsuit[2]

On November 12, 2019, Stanek and Arguello filed a separate lawsuit against WRG in Denver District Court, seeking a permanent injunction to prevent WRG from arbitrating its claims in Stanek and Arguello's arbitration proceeding against Stanek Constructors.  (ECF No. 67.)  They also seek an order that no arbitration agreement exists between them and WRG.  (*Id.*)

WRG removed this action to federal court on November 27, 2019 and filed an Amended Notice of Removal on December 9, 2019.  (ECF No. 61.)  Arguello and Stanek moved to remand the case to state court on January 11, 2020.  (ECF No. 68.) WRG responded on January 13, 2020 (ECF No. 69), and Arguello and Stanek replied on January 21, 2020 (ECF No. 70).

On March 11, 2020, WRG filed Amended Counterclaims against Arguello and Stanek.  (ECF No. 72.)  WRG alleges that during the negotiation of the SPA and the Employment Agreements, Stanek and Arguello fraudulently or negligently made

---

[2] On April 21, 2020, the Court entered an order consolidating *Arguello et al. v. Water Resources Group*, Civil Action No. 19-cv-3360 with *Stanek Holdco v. Water Resources Group*, Civil Action No. 19-cv-3194.  (ECF No. 60.)  When citing motions filed in *Arguello et al. v. Water Resources Group*, the Court will cite the docket entries as they appear in the consolidated action, Civil Action No. 19-cv-3194.

material misrepresentations to WRG regarding the value and profitability of Stanek Constructors.  WRG seeks (1) a declaratory judgment that WRG's claims are arbitrable (*see id.* at 10, ¶¶ 37–42); and (2) an order directing the parties to proceed to arbitration on WRG's claims under 9 U.S.C. § 4 (*see id.* at 10–11, ¶¶ 43–49.)

Stanek and Arguello moved to dismiss WRG's Amended Counterclaims on March 31, 2020.  (ECF No. 73.)  WRG responded on April 15, 2020 (ECF No. 74), and Arguello and Stanek replied on April 29, 2020 (ECF No. 78).

On April 16, 2020, WRG filed its Motion for Summary Judgment.  (ECF No. 75.) Stanek and Arguello responded on May 28, 2020 (ECF No. 86), WRG replied on June 11, 2020 (ECF No. 88).

## II. MOTIONS TO DISMISS WRG'S ORIGINAL COUNTERCLAIMS

After Holdco moved to dismiss WRG's original counterclaims (ECF No. 22), WRG filed an Amended Counterclaim in the lawsuit (ECF No. 23).  By filing its Amended Counterclaims, WRG has rendered its original counterclaims moot.  *See Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").  Because there is no longer a live dispute about the merit of WRG's original counterclaims, Holdco's Motion to Dismiss those counterclaims is denied as moot.  *See Leveraged Innovations LLC v. BATS Exch., Inc.*, 2014 WL 11516547, at *1 (D. Kan. May 29, 2014) (denying plaintiff's motion to dismiss defendants' counterclaims as moot because defendants amended their counterclaims).

Stanek and Arguello's Motion to Dismiss WRG's original counterclaims (ECF No. 71) is likewise denied as moot because those counterclaims were superseded by

WRG's Amended Counterclaims (ECF No. 72).

### III. MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

WRG asks the Court to compel Holdco to arbitrate WRG's Fifth Affirmative

Defense[3] and Count I of its Amended Counterclaims[4] against Holdco under 9 U.S.C. §§

2–4 and to stay the remaining claims in this action until the arbitration proceeding has

concluded.  (ECF No. 24 at 1.)

### A.    Legal Standard

Section 2 of the Federal Arbitration Act ("FAA") declares that a written agreement

to arbitrate in any contract involving interstate commerce or a maritime transaction

"shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or

in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 4 of the FAA permits

a party to an arbitration agreement to "petition any United States district court . . . for an

order directing that such arbitration proceed in the manner provided for in such

agreement."  *Id*. § 4.  The Supreme Court has interpreted the FAA as "manifest[ing] a

'liberal federal policy favoring arbitration agreements.'"  *Gilmer v. Interstate/Johnson*

---

[3] WRG's Fifth Affirmative Defense states that "[t]he Complaint is barred by Plaintiff's own fraudulent conduct and misrepresentations, including, among other things, fraudulent and negligent misrepresentations and omissions made to induce [WRG] to enter into the [SPA]." (ECF No. 23 at ¶ 40.)

[4] Count I of WRG's Amended Counterclaim alleges that Holdco represented to WRG in the fall of 2017 that Stanek Constructors's El Estero Project was projecting a profit of over $1.9 million and concealed or failed to disclose before execution of the SPA that Stanek Constructors was actually likely to lose significant money on the project.  (ECF No. 23 at 17.) WRG further alleges that Holdco made false representations in Section 4.19 of the SPA regarding Stanek Constructors's compliance with its ERISA obligations.  (*See id.* at 17–18.) WRG contends that Holdco acted intentionally, recklessly, or without reasonable care in making both sets of representations and intended to induce WRG into closing the transaction for the SPA and Employment Agreements, and that WRG relied on both sets of representations.  (*See id.* at 17–19.)

*Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  "As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Determining whether a dispute is subject to arbitration "is similar to summary judgment practice."  *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014) (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). The party moving to compel arbitration must present "evidence sufficient to demonstrate the existence of an enforceable agreement."  *Id.*  The burden then shifts to the nonmoving party "to raise a genuine dispute of material fact regarding the existence of an agreement."  *Id.*  If the nonmoving party seeks to invalidate an arbitration agreement, he bears the burden of showing that the arbitration agreement prevents the effective vindication of his rights.  *See Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 377–79 (10th Cir. 2016).

**B.    Analysis**

1.    The Court's Power to Determine Arbitrability

Before turning to the question of whether WRG's claims are arbitrable, the Court must determine who should decide arbitrability.  *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) ("Before we address the specific arbitrability of the claims raised . . . in [this] federal suit, we must address the threshold issue of who decides arbitrability in the first place—the courts or an arbitrator.").

8

Because "arbitration is a matter of contract," courts must "place[ ] arbitration agreements on an equal footing with other contracts," and "enforce them according to their terms."  *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Commc'n Workers of Am. v. Avaya, Inc.*, 693 F.3d 1295, 1303 (10th Cir. 2012) (recognizing that there is a "presumption that questions about the arbitrability of an arbitration dispute will be resolved by the courts").

The arbitration provisions at issue in the Employment Agreements are silent regarding the question of who determines arbitrability.  As such, the determination about whether WRG's claims are arbitrable is left to the Court.

> 2.   <u>Choice of Law</u>

The Court must next decide what law it should apply to govern questions related to the interpretation of the SPA and Employment Agreements.

Courts must apply "background principles of state contract law" in evaluating an arbitration agreement.  *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630 (2009); *accord Volt Info Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989) (noting that "general state-law principles of contract interpretation" govern the interpretation of an arbitration agreement within the scope of the FAA).  "A federal court siting in diversity applies the conflict of law rules of the forum state."  *Kipling v. State Farm Mut. Auto Ins. Co.*, 159 F. Supp. 3d 1254, 1268 (D. Colo. 2016).

Colorado has adopted the choice of law principles set forth in the Restatement (Second) of Conflict of Laws.  *See id.*  Restatement (Second) § 187(1) provides that the

law of the state chosen by the parties to govern their contractual rights will be applied

unless: (1) the chosen state has no substantial relationship to the parties to the

transaction and there is no other reasonable basis for the parties' choice; or (2)

application of the law of the chosen state would be contrary to a fundamental policy of

the state which has a materially greater interest than the chosen state in the

determination of the particular issue . . . ."

The SPA states that the "internal law . . . of [Minnesota] will govern all questions

concerning the construction, validity and interpretation of th[e] [SPA]." (ECF No. 25-1 at

§ 9.10.)  The Employment Agreements, however, provide that they "shall be subject to

and governed by the laws of [Colorado]." (ECF No. 25-2 at § 12(b).)  Neither party

alleges either state law lacks a substantial relationship to the parties, or that applying

either state's law would be contrary to a fundamental state policy.  Accordingly, the

Court will apply Minnesota law when determining questions relating to the SPA and

Colorado law when interpreting the Employment Agreements.

     3.   <u>Whether the SPA Incorporates the Arbitration Provision</u>

Notwithstanding that the SPA does not contain its own arbitration provision,

WRG argues that "there is a legal binding and valid arbitration agreement between

[Holdco] and [WRG]." (ECF No. 24 at 11.)  According to WRG, the Employment

Agreements—which were attached as Exhibit A to the SPA—are incorporated into the

SPA pursuant to two provisions of the SPA:

     •    <u>Complete Agreement</u>.  This Agreement (including the
            exhibits and schedules hereto) contain the complete
            agreement between the parties with respect to the subject
            matter thereof, and supersede any prior understandings,
            agreements or representations by or between the parties,

> written or oral, which may have related to the subject matter
> thereof in any way.
>
> •   Schedules and Exhibits.  The exhibits and schedules to this
>     Agreement constitute a part of this Agreement and are
>     incorporated into this Agreement for all purposes as if fully
>     set forth herein. . . .

(ECF No. 25-1 at §§ 9.8, 9.12.)  Based on these provisions, WRG argues that "[t]he

only reasonable interpretation of the [SPA's] plain language, giving effect to all of its

provisions, is that [Holdco] and [WRG] incorporated the Employment Agreements,

including the arbitration provision."  (ECF No. 24 at 11.)  In response, Holdco argues

that the arbitration clause in the Employment Agreements cannot be read into the SPA.

(ECF No. 46 at 7–10.)  The Court agrees with Holdco.

It is true that "instruments executed at the same time, for the same purpose, and

in the course of the same transaction, are, in the eye of the law, one instrument, and

will be read and construed together, unless the parties stipulate otherwise."  *In re

Holtorf's Estate*, 28 N.W.2d 155, 157 (Minn. 1947).  The SPA and the Employment

Agreements were executed on the same date as part of WRG's acquisition of Stanek

Constructors.  However, because the contracts were clearly executed as separate

documents that serve wholly different contractual purposes, the Court would be ignoring

the parties' written intent were it to conclude that the two contracts have effectively

merged into a single contract.

If WRG and Holdco wanted to incorporate an arbitration provision into the SPA,

they could have easily written such a provision into that contract.  They could have also

explicitly stated that the arbitration provisions from the Employment Agreements were

11

incorporated into the SPA.[5]  They did neither.  The Court must therefore give the

"[u]nambiguous contract language . . . its plain and ordinary meaning," *Metro. Airports*

*Comm'n v. Noble*, 763 N.W.2d 639, 645 (Minn. 2009), and it will not on this record read

an arbitration provision into the SPA.  *See State ex rel. Hatch v. Cross Country Bank,*

*Inc.*, 703 N.W.2d 562, 569 (Minn. Ct. App. 2005) ("Arbitration is a matter of contract,

and a party that has not agreed to arbitrate a dispute cannot be required to arbitrate.");

*Am. Bank of St. Paul v. Coating Specialities, Inc.*, 787 N.W.2d 202, 205 (Minn. Ct. App.

2010) ("[A] party that fails to include a term in a contract is bound by the agreement and

cannot use extrinsic evidence to alter unambiguous contract language.").

Moreover, if the Court were to read in every provision from the Employment

Agreements into the SPA, numerous contractual provisions between the contracts

would conflict with each other, including the choice of law provisions.  Thus, the Court

will not conclude that the parties intended to apply every provision from the

Employment Agreements to the SPA.  *See Current Tech. Concepts, Inc. v. Irie Enters.,*

*Inc.*, 530 N.W.2d 539, 543 (Minn. 1995) (recognizing that "[a] contract must be

interpreted in a way that gives all of its provisions meaning").

4.     Whether the Terms of the Employment Agreements Cover WRG's Claims

It is well-settled that "questions of arbitrability in contracts subject to the FAA

---

[5] This case is distinguishable from *Buchman Plumbing Co., Inc. v. Regents of the Univ. of Minn.*, 215 N.W.2d 479 (Minn. 1974), which WRG cites for the proposition that a contract's exhibits can be incorporated by reference into a contract.  *See id.* at 485–86.  The contract in *Buchman Plumbing* explicitly stated that the "drawings and specifications are a part of [that] contract."  *See id.*  Their intent to incorporate the precise specifications contained in the exhibit drawings into the contract was thus unambiguous.  The same cannot be said of the parties' intent in this case where the parties did not explicitly state their intent to apply the Employment Agreements' arbitration provisions to every dispute arising under the SPA.

must be resolved with a healthy regard for the federal policy favoring arbitration." *Volt Info. Scis*, 489 U.S. at 475. "If a contract contains an arbitration clause, a presumption of arbitrability arises," which "may be overcome only if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (internal quotation marks omitted). This presumption in favor of arbitrability applies "with even greater force" when "a broad arbitration clause is at issue." *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999).

The arbitration provision in each Employment Agreement states as follows:

> <u>Arbitration</u>. Any dispute arising out of or relating to this Agreement or the alleged breach of it, or the making of this Agreement, including claims of fraud in the inducement, shall be settled by binding arbitration. . . . Arbitration will be conducted pursuant to the provisions of this Agreement, and the Colorado District Rules of Civil Procedure, except as limited by this paragraph (c), unless such rules are inconsistent with provisions of this Agreement. . . .

(ECF No. 25-2 at § 12(c).) WRG argues that its claims—that Holdco made material misrepresentations during the negotiation of the acquisition—fall within the broad scope of the arbitration provision under the Employment Agreement. (ECF No. 24 at 12–14.) According to WRG, Holdco's alleged misrepresentations regarding Stanek Constructors's financial projections and ERISA compliance relate to the making of the Employment Agreements because WRG would not have executed either the Employment Agreements or the SPA if it had known the true state of Stanek Constructors's operations and financial condition. (ECF No. 23 at 16–17.)

Holdco, on the other hand, argues that the arbitration provision is limited to

13

disputes between the signatories to the contract—*i.e.*, Stanek Constructors and Stanek and Arguello—and claims brought under the Employment Agreements.  (ECF No. 46 at 11–12.)

The plain text of the contract, however, contradicts Holdco's interpretation.  The arbitration provision is not, as Holdco contends, limited to "disputes [solely between Stanek Constructors and Stanek and/or Arguello] arising out of or relating to the [Employment] Agreement."  Instead, the provision covers "*[a]ny dispute* arising out of or relating to this Agreement . . . *or the making of this Agreement, including claims of fraud in the inducement.*"[6]  (ECF No. 25-2 at § 12(c) (emphasis added).)

The Court finds that WRG's claim that it was fraudulently induced into acquiring Stanek Constructors relates directly to the "making of this Agreement."  After all, it is reasonable to presume that WRG might not have acquired Stanek Constructors if it had known the alleged truth regarding Stanek Constructors's financial projections and ERISA compliance.  In this hypothetical scenario, neither the SPA nor the Employment Agreements would have been executed on March 1, 2018.  *Cf. Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (finding an agreement to arbitrate "any controversy or claim arising out of or relating to this Agreement, or the breach thereof" was "easily broad enough to encompass" a party's fraudulent inducement claim).

---

[6] The Tenth Circuit has concluded that the phrase "arising out of or relating to" means that the parties intended their arbitration agreement to be construed broadly. *See P & P Indus., Inc.*, 179 F.3d at 871.  Where, as here, "the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (internal quotation marks and citation omitted).

Moreover, because many of the alleged fraudulent and/or negligent misstatements were made by Stanek and Arguello (*see* ECF No. 23 at 14–16), the Court can reasonably infer that *they* may not have remained employed with Stanek Constructors post-acquisition if WRG (which acquired 100% of the issued and outstanding capital stock of Stanek Constructors) had known that any of Stanek or Arguello's statements were false or materially misleading.

The Court therefore finds that WRG has provided "evidence sufficient to demonstrate the existence of an enforceable [arbitration] agreement" that encompasses WRG's Fifth Affirmative Defense and Count I of its Counterclaims.  Holdco has failed to raise a genuine dispute regarding the existence of the agreement or explain how it would be prejudiced by allowing certain claims to be adjudicated through arbitration. *See Bellman*, 563 F. App'x at 612; *Hancock*, 701 F.3d at 1261; *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696–97 (Colo. 2009) (recognizing that "[c]ontract interpretation is a question of law for the court to decide").

   5.   <u>Whether To Stay the Action</u>

The determination about whether it is appropriate to stay litigation among the parties' remaining non-arbitrable claims is left to the district court "as a matter of its discretion to control its dockets."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.23; *see also Let's Go Aero, Inc. v. Cequent Performance Prods., Inc.*, 78 F. Supp. 3d 1363, 1380 (D. Colo. 2015).  A "[s]tay of the entire proceeding is appropriate when resolution of the arbitrable claim will have a preclusive effect on the nonarbitrable claim."  *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009); *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 783 (8th Cir.

2001) (when considering whether to grant a discretionary stay, courts should consider "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays").

The Court that finds that a stay is appropriate to avoid the risk of inconsistent and/or piecemeal rulings.  This is particularly so given that the result of the arbitration may well have a preclusive effect on WRG's third counterclaim (breach of contract), and any prejudice to Holdco is minimal.

## IV. PLAINTIFFS STANEK AND ARGUELLO'S MOTION TO REMAND

Stanek and Arguello argue that the Court lacks subject matter jurisdiction to hear *Arguello and Stanek v. Water Resources Group, Inc.*, Civil Action No. 19-cv-3360, which requires remand to Denver District Court.  (ECF No. 68.)

### A.    Legal Standard

District courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the suit is between citizens of different states.  28 U.S.C. § 1332(a).  If, as here, "the in-state plaintiff wishes to remain in state court, all it needs to do is to refrain from alleging any particular sum in its prayer for relief . . ., and . . . the defendant is required to prove jurisdictional facts by a 'preponderance of the evidence' such that the amount in controversy may exceed $75,000."  *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008).  Once the defendant puts forth facts indicating that the jurisdictional amount is satisfied, he is entitled to remain in federal court unless it is "legally certain" that less than $75,000 is at stake.  *Id*. at 954.  Where a plaintiff seeks non-monetary relief, a defendant's notice of removal may assert the amount in controversy.  28 U.S.C. § 446(c)(2)(A)(i).  In such a

case, the defendant "may establish the amount in controversy based on the information in its notice of removal." *Lentz v. Amica Mut. Ins. Co.*, 2013 WL 4510316, at *2 (D. Colo. Aug. 26, 2013).

In cases seeking declaratory relief, the amount in controversy is usually measured by the value of the object of the litigation. *See Lovell v. State Farm Mut. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006). In such circumstances, the amount in controversy can be determined by either "the value to the plaintiff or the cost to defendant of injunctive and declaratory relief." *Id.* Moreover, where a party seeks to compel or enjoin arbitration, the amount in controversy requirement is evaluated by looking "through to the possible award resulting from the desired arbitration." *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1217 (10th Cir. 2003); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256–57 (5th Cir. 1996).

**B.     Analysis**

Stanek and Arguello seek to enjoin WRG from becoming a party to their arbitration proceeding against Stanek Constructors and "arbitrating claims arising from, out of, or relating to the [SPA]." (ECF No. 67 at 5.) In other words, they aim to prevent WRG from asserting claims in the arbitration that Stanek and Arguello made fraudulent or negligent misrepresentations and omissions in order to induce WRG to enter into the SPA to acquire Stanek Constructors for $2,222,525.46. (ECF No. 61 at 4.) If WRG is allowed to join the arbitration and prevails in the underlying arbitration, it would be entitled to either "affirm the contract and seek damages . . . , or rescind the contract and tender back what [it] received." *Elliott v. Aspen Brokers, Ltd.*, 811 F. Supp. 586, 591 (D. Colo. 1993).

Under this rationale, the potential amount-in-controversy—*i.e.*, the stakes of WRG's claim in the arbitration—is $2,222,525.46.  *See Webb*, 89 F.3d at 256 (in an action to enjoin arbitration, the court looks at the amount of the claim in the underlying arbitration to determine the amount in controversy); *Woodmen of World Life Ins. Soc'y*, 343 F.3d at 1217 (recognizing that in cases to compel arbitration, the amount-in-controversy may be determined by "look[ing] through to the possible award resulting from the desired arbitration").  The jurisdictional requirements under 28 U.S.C. § 1332 are thus satisfied.

Accordingly, Stanek and Arguello's Motion to Remand is denied.

## V. WRG'S MOTION FOR SUMMARY JUDGMENT

**A.    Standard of Review**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In

addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## B.    Analysis

In arguing that its claims against Stanek and Arguello are arbitrable, WRG makes the same arguments that the Court has already analyzed above in connection with WRG's Motion to Compel Arbitration.  Stanek and Arguello, likewise, make numerous arguments regarding the proper interpretation of the Employment Agreements that are identical to arguments raised by Holdco.  The Court thus incorporates its analysis in Part III.B to its consideration of WRG's Motion for Summary Judgment.

As recognized above, the arbitration provision in Stanek and Arguello's Employment Agreements encompasses WRG's claims that it was fraudulently or negligently induced into acquiring Stanek Constructors.  Because the interpretation of the Employment Agreements is a question of law for the Court to decide, *see Copper Mountain, Inc.*, 208 P.3d at 696–97, there are no genuine material factual disputes that would alter the Court's determination that WRG's claims are arbitrable.  As such, the Court will grant summary judgment in WRG's favor.[7]

The Court's determination that WRG's claims against Stanek and Arguello are arbitrable based on the contract language is in the interests of justice as well.  After all, Stanek and Arguello's termination letters state that they were terminated for, among

---

[7]  For the same reasons described herein, the Court will deny Stanek and Arguello's Motion to Dismiss Defendant's Amended Counterclaims.  (ECF No. 73.)

other things, engaging in misconduct in violation of Section 3(c)(2)(i)(e) of their Employment Agreements and breaching the SPA.  (ECF Nos. 86-1, 86-2, 76-2 at 29 (allowing immediate termination in the event that "Employee has breached in any material respect a provision of this Agreement or any other agreement between Employer and Employee").)  If the Court were to enjoin WRG from joining the arbitration, then the Court would, in essence, be prohibiting the arbitrator from learning of some of the very purported misconduct that allegedly led to the Stanek and Arguello's termination.  Such a result would be inequitable.  Accordingly, the Court believes it is both just and judicially economical for the arbitrator to resolve all of the disputes relating to Stanek and Arguello's employment, including disputes regarding the allegedly fraudulent statements that they made in advance of the execution of the SPA and Employment Agreements.

## VI. CONCLUSION

Accordingly, for the reasons stated, the Court ORDERS as follows:

1.      Plaintiff Stanek Holdco's Motion to Dismiss Defendant's Counterclaims (ECF No. 22) is DENIED AS MOOT;

2.      Defendant Water Resources Group's Motion to Compel Arbitration and Stay Proceedings (ECF No. 24) IS GRANTED as follows:

      a.      Plaintiff Stanek Holdco, Inc. is COMPELLED to arbitrate Defendant Water Resources Group's Fifth Affirmative Defense and Count I of its Amended Counterclaims;

      b.      The case *Stanek Holdco, Inc. v. Water Resources Group*, 19-cv-3194 is STAYED pending the conclusion of the arbitration proceedings involving WRG's claims; and

      c.      Pursuant to D.C.COLO.LCivR 41.2, the Clerk shall ADMINISTRATIVELY CLOSE *Stanek Holdco, Inc. v. Water Resources Group*, 19-cv-3194, subject to a motion to reopen for good cause subsequent to the conclusion of Defendant Water Resources Group's arbitration proceedings.

3.      Plaintiffs Arguello and Stanek's Motion to Remand for Lack of Subject Matter Jurisdiction (ECF No. 68) is DENIED;

4.      Plaintiff Arguello and Stanek's Motion to Dismiss Defendant's Counterclaim for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 71) is DENIED AS MOOT;

5.      Plaintiffs' and Counterclaim Defendants' Motion to Dismiss Defendant's Amended Counterclaims for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 73) is DENIED;

6.      Defendant Water Resources Group's Motion for Summary Judgment (ECF No. 75) is GRANTED;

7.      Plaintiffs Stanek and Arguello are COMPELLED to arbitration pursuant to the terms of their Employment Agreements;

8.      The Clerk of Court shall enter judgment in favor of Defendant Water Resources Group on all claims in *Stanek et al. v. Water Resources Group*, 19-cv-3360 and shall terminate that case; and

21

9.      Defendant Water Resources shall have its costs in *Stanek et al. v. Water*

*Resources Group*, 19-cv-3360.

Dated this 17th day of August, 2020.

BY THE COURT:

_____

William J. Martinez
United States District Judge
